KRISTINE K. ROSELIUS,  **UNITED STATES DISTRICT COURT**
                        Plaintiff,  **SOUTHERN DISTRICT OF FLORIDA**

                               CASE NO. 95-6887-CIV-ROETTGER

v.

## ORDER

JAMES McDANIEL, individually,
as an agent for KISSIMMEE BILLIE
SWAMP SAFARI, SEMINOLE TRIBE OF
FLORIDA COMMUNITY DEVELOPMENT
CORPORATION, and SEMINOLE TRIBE
OF FLORIDA, INC.; KISSIMMEE BILLIE
SWAMP SAFARI; SEMINOLE TRIBE OF
FLORIDA COMMUNITY DEVELOPMENT
CORPORATION, a federal corporation,
SEMINOLE TRIBE OF FLORIDA, INC., a
federal corporation,

                        Defendants.
_____/



FILED by _____ D.C.

CARLOS ……
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

      **THIS CAUSE** is before the Court on a motion by the Seminole Tribe of Florida d/b/a "Kissimmee Billie Swamp Safari" and the Seminole Tribe of Florida Community Development Corporation to dismiss this cause for lack of subject matter jurisdiction. (DE 8). This court held a brief hearing and reserved ruling pending further discovery on the jurisdictional issues that are the subject of the instant motion. After permitting ample time for discovery, the court issued an order notifying the parties that the motion to dismiss would be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 56. The parties were directed to provide the court with any further submissions within a fifteen day period. The motion is now ripe for disposition.

      Plaintiff Kristine Roselius brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Plaintiff, a female, alleges that she was employed beginning June

3, 1994, to perform marketing and public relations activities for Kissimmee Billie Swamp Safari, Seminole Tribe of Florida Community Development Corporation, and the Seminole Tribe of Florida, Inc. Plaintiff claims that during the course of her employment she was subjected to a "continuous barrage of unwelcome sexual harassment." Second Amended Complaint, at ¶ 15. Defendant James McDaniel, plaintiff's supervisor, is alleged to be the person responsible for creating the "sexually hostile work environment" of which plaintiff complains. Id. at ¶ 30.

Plaintiff's five-count Second Amended Complaint (DE 60), which includes pendent state causes of action under the Florida Civil Rights Act and for battery, is brought against McDaniel, the Kissimmee Billie Swamp Safari, Seminole Tribe of Florida Community Development Corporation, and Seminole Tribe of Florida, Inc.

The Seminole Tribe of Florida (hereinafter "the Tribe") filed the instant motion to dismiss the complaint for lack of subject matter jurisdiction. The Tribe asserts in its motion that "Kissimmee Billie Swamp Safari" is a trade name used by the Tribe, and that at all times relevant to the complaint plaintiff was employed by the Tribe, and only the Tribe. Thus, the Tribe claims that the doctrine of sovereign immunity applies, requiring dismissal of this action. Plaintiff disputes this, claiming that she was employed not by the sovereign Tribe, but rather by entities "encompassed under the umbrella of the Seminole Tribe of Florida, Inc., which waived any defense of tribal immunity." Plaintiff's Response, at 2. (DE 23). The applicability of the sovereign

2

immunity doctrine hinges upon which entity or entities employed Ms. Roselius.

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate upon a showing, with evidence in the record, that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The Supreme Court has stated that the "plain language of Rule 56(c) mandates the entry of summary judgment. . . against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Rule 56(e) states that a party defending a summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading", but instead must raise a triable issue of fact "by affidavits or as otherwise provided in this rule."

**THE DOCTRINE OF SOVEREIGN IMMUNITY**

As sovereigns, Indian tribes enjoy immunity from suit absent explicit abrogation of the immunity by Congress or the tribe itself. Oklahoma Tax Comm. v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 509 (1991). An important factor, cited by courts as justifying the continued recognition of tribal sovereign immunity, is its protection of scarce tribal resources. See, e.g., Cogo v. Central Council of the Tlingit and Haida Indians of Alaska, 465 F.Supp. 1286, 1288 (D. Alaska 1979)("If tribal assets could be dissipated by litigation, the efforts of the United

3

States to provide the tribes with economic and political autonomy could be frustrated.")

As a general rule, a waiver of sovereign immunity must be unequivocally expressed, and any waiver is to be interpreted liberally in favor of the tribe and restrictively against the claimant. Maryland Casualty Co. v. Citizens National Bank, 361 F.2d 517, 521 (5th Cir. 1966).

**TITLE VII AND INDIAN TRIBES**

The court notes that Congress has specifically exempted Indian tribes from its definition of "employer" under Title VII. 42 U.S.C. § 2000e. See Dille v. Council of Energy Resource Tribes, 801 F.2d 373, 374-375 (10th Cir. 1986)(noting that Title VII tribal exemption, like other statutes passed "for the benefit of dependent Indian tribes," should be liberally construed).

**TRIBAL SOVEREIGN ENTITIES (§ 16) & TRIBAL CORPORATE ENTITIES (§ 17)**

The Seminole Tribe of Florida consists of approximately 2180 tribal members, the majority of whom live in Broward, Hendry, Glades, Hillsborough and Collier counties. Affidavit of Max B. Osceola, Jr. at ¶ 5. The Tribe is organized under the Indian Reorganization Act of 1934, 25 U.S.C. § 461, et seq.

The Act provides for two types of entities. Section 16 of the Act governs the organization of tribal governments, 25 U.S.C. § 476, while Section 17 governs the organization of tribal business organizations. 25 U.S.C. § 477. By enacting Section 17, Congress intended to make it easier for tribes to do business with non-Indians. See Hearings on H.R. 7902, 73d Cong., 2d Sess. 90-100

4

(1934); S. REP. NO. 1080, 73d Cong., 2d Sess. (1934). Section 17 entities are separate and distinct from the Section 16 governmental entity. It is important to note, however, that Section 16 governmental entities are not precluded by statute from engaging in economic activities. See William Vetter, <u>Doing Business With Indians and the Three "S"es: Secretarial Approval, Sovereign Immunity and Subject Matter Jurisdiction</u>, 36 Ariz. L. Rev. 169, 175 (Spring 1994).

Section 17 corporate entities almost always include a "sue or be sued" clause in their corporate charters. <u>Id.</u>; <u>Dixon v. Picopa Constr. Co.</u>, 755 P.2d 421, 424 (Ariz. Ct. App. 1987)("Our research has revealed no cases involving a suit against a § 17 corporation whose charter did not include a "sue or be sued" clause."). Such a clause effectively waives sovereign immunity for these tribal businesses. This waiver of immunity must be strictly construed, and normally applies to actions against the corporate body, not the Section 16 tribal government. See e.g., <u>Ramey Const. Co., Inc. v. Apache Tribe of Mescalero Reservation</u>, 673 F.2d 315 (10th Cir. 1982).

The Seminole Tribe, which was set up as a governmental entity under Section 16, created in 1957 a Section 17 federally-chartered Indian corporation known as Seminole Tribe of Florida, Inc. (hereinafter "Tribe, Inc.") Tribe, Inc. was empowered "[t]o engage in any business that will further the economic well-being of [the members of the Tribe] . . . ." Corporate Charter, Exhibit A to Plaintiff's Response. Tribe Inc.'s corporate charter at section

nine includes a "sue or be sued" clause, thus explicitly waiving sovereign immunity for the tribal corporation.[1]

**PLAINTIFF'S EMPLOYER: WAS IT THE SECTION 16 OR SECTION 17 ENTITY?**

Sovereign immunity plainly applies if plaintiff attempts to sue the tribal sovereign entity. However, if plaintiff was, as she claims, employed by the Section 17 tribal corporation, the waiver of immunity effected by the "sue or be sued" clause may apply. See, e.g., Ramey Constr. Co., 673 F.2d at 320 (affirming district court's holding that because plaintiff contracted and dealt only with sovereign tribe and not tribe's separate corporate entity, sovereign immunity applied).

The court must examine the record to determine the facts and circumstances surrounding plaintiff's employment. Ms. Roselius was employed as a Marketing and Public Relations Representative for the Kissimmee Billie Swamp Safari attraction located on the Big Cypress tribal reservation. Plaintiff admits that before assuming her duties, she filled out a federal income tax W-2 form that listed her employer as "Seminole Tribe of Florida." Plaintiff's Deposition, at 18.

The defendants claim that Kissimmee Billie Swamp Safari is a subordinate economic enterprise of the sovereign Tribe, and is in no way related to defendant Tribe, Inc. or defendant Seminole

---

[1] Because of the court's ultimate decision to grant defendants' motion, it is unnecessary to determine whether Tribal Ordinance C-01-95, which purports to abrogate the sue or be sued clause, applies to this lawsuit.

Community Development Corporation.[2] Defendants support this contention with unrefuted record evidence. See Osceola Affidavit, at ¶ 14 ("At no time and under no circumstances has Tribe, Inc. had any ownership or management involvement in the operations of the Kissimmee Billie Swamp Safari which always has been and continues to be operated as a subordinate governmental and economic enterprise of Seminole Tribe's tribal government."); Shore Affidavit, at ¶ 8 ("The Seminole Tribe of Florida Community Development Corporation did not employ Kristine Roselius or James McDaniel."); id. at ¶ 9 ("The Seminole Tribe Community Development Corporation never owned, managed, leased, controlled, or had any interest in the Kissimme Billie Swamp Safari.").

Plaintiff relies upon a provision in Tribe, Inc.'s corporate charter regarding the corporation's powers to support its contention that the Safari is a subordinate entity of Tribe, Inc. Article VI, section 5 states that Tribe, Inc. is empowered "[t]o engage in any business that will further the economic well-being of the shareholders[3] of the corporation . . . ." This provision,

---

[2]Defendants dispute the allegation that the Seminole Tribe of Florida Community Development Corporation had a leasehold interest in the Billie Swamp Safari, pointing to the Tribe's general counsel Jim Shore's affidavit which states: "The Seminole Tribe of Florida had intended to lease the Kissimmee Billie Swamp Safari to the Seminole Tribe of Florida Community Development Corporation. However, the proposed lease agreement was never approved by the United States Department of Interior-Bureau of Indian Affairs as required by law and therefore never became effective." There is nothing in the record to dispute this.

[3]Article IV, section 1 specifies that Tribe, Inc. "shall be a membership corporation. Its members shall consist of all persons now or hereafter enrolled members of the tribe."

7

argues plaintiff, establishes a "relationship" between Tribe, Inc. and the Kissimmee Billie Swamp Safari.[4] Plaintiff asks the court to conclude that <u>all</u> economic activities conducted by the Seminole Tribe are in effect conducted by Tribe, Inc. Without more, this argument must be rejected. Courts have recognized that Section 16 governmental entities can engage in economic activities, even when a tribe has chartered a corporation pursuant to Section 17. <u>See</u>, <u>e.g.</u>, <u>Ramey Construction Co.</u>, 673 F.2d at 320 (upholding district court's finding that plaintiff construction company contracted and did business only with the tribal constitutional entity, and not the tribal corporate entity); <u>Parker Drilling Company v. Metlakatla Indian Community</u>, 451 F.Supp. 1127, 1130-31 (D. Alaska 1978)(noting that the central issue before the court is "whether the airport . . . [is] owned by the section 16 governmental organization or section 17 Indian corporation . . . ."); <u>S. Unique, Ltd. v. Gila River Pima-Maricopa Indian Comm.</u>, 674 P.2d 1376, 1382 (Ct. App. Ariz. 1983)("The Community as the governmental organization of the tribe can, and in this case did, operate a commercial farming venture . . . as a subordinate economic organization of the Community. This does not waive tribal immunity.")

---

[4] Plaintiff has attached to her response a copy of a 1982 publication apparently entitled "Twenty-Fifth Anniversary: Seminole Tribe of Florida Inc." The publication, says plaintiff, "groups all econimic entities, with a variety of names under the umbrella of the Corporate Charter of the Seminole Tribe of Florida, Inc." Plaintiff concedes that the entities sued in the instant case are not listed in the publication as they were not yet in existence. The court does not find the publication to be relevant in determining whether plaintiff was employed by the Tribe or Tribe, Inc.

Plaintiff offers a personnel form related to plaintiff's employment that bears the heading "Seminole Tribe of Florida/Seminole Tribe of Florida, Inc." to support her claim that the tribal corporation was her employer. Similarly, plaintiff points to an insurance handbook supplied by her employer that describes insurance coverage for employees of the Seminole Tribe of Florida and Seminole Tribe of Florida, Inc. Exhibit A to Plaintiff's Reply (DE 31). These items are not sufficient to create an issue of fact regarding the identity of plaintiff's employer as neither the form nor the insurance handbook speak to the question of whether the tribal corporation, rather than the tribe itself, was plaintiff's employer.

**SUMMARY JUDGMENT AGAINST PLAINTIFF IS APPROPRIATE**

The court finds that plaintiff has not met her summary judgment burden of producing evidence sufficient to establish that there exists an issue of fact with regard to the identity of her employer. The record indicates that plaintiff was employed by an economic arm of the tribal government, and therefore sovereign immunity, and the Title VII exclusion of Indian tribes from the definition of employer, prevent her claims of employment discrimination from proceeding further in this court.

**PUBLIC LAW 280**

Plaintiff has suggested that another basis for jurisdiction in this case can be found in federal Public Law 280 and section 285.16(1), Florida Statutes. Section 7 of Public Law 280 provides:

> [T]he consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of actions, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof.

Pub.L. 83-280, ch. 505, § 7, 67 Stat. 590 (1953)(repealed 1958)(repealed 1968). In 1968 Congress repealed the statute, but the repeal did "not affect any cession of jurisdiction made pursuant to such section prior to its repeal." Pub.L. 90-284, Tit. IV, § 403(b)m 82 Stat. 79 (1968).

In 1961 the Florida Legislature enacted section 285.16, which reads, in pertinent part, as follows:

> The State of Florida hereby assumes jurisdiction over criminal offenses committed by or against Indians or other persons within Indian reservations and over civil causes of action between Indians or other persons or to which Indians or other persons are parties rising within Indian reservations.

§ 285.16(1), Fla. Stat. (1961).

Upon review of the statutes and relevant caselaw, it is plain that § 285.16(1) does not provide the court with general jurisdiction over civil disputes involving Indian <u>tribes</u>. The statute was interpreted recently by the Florida Supreme Court in <u>Houghtaling v. Seminole Tribe of Florida</u>, 611 So.2d 1235 (Fla. 1993). <u>Houghtaling</u> originated as a negligence action brought against the Seminole Tribe by a plaintiff who apparently sustained injuries at a bingo hall operated by the defendant. The Court unanimously rejected the plaintiff's argument that Florida courts

10

had subject matter jurisdiction under § 285.16 to hear civil actions brought against tribes themselves, although the courts do have jurisdiction over suits between Indians and other persons. The Court examined the statutes and found that "Public Law 83-280 did not waive the Seminole Tribe's sovereign immunity and that, absent such an expressed waiver, section 285.16 cannot provide jurisdiction in suits against the Tribe." Id. at 1239.

Plaintiff's attempt to invoke Public Law 280 to establish this court's jurisdiction must fail.

**CLAIMS AGAINST JAMES MCDANIEL**

Plaintiff has named James McDaniel, her supervisor, as a defendant in Counts I, II, and III under Title VII. It is well established in the Eleventh Circuit that Title VII does not provide a cause of action against individuals. Busby v. City of Orlando, 931 F.2d 764 (11th Cir. 1991); Cross v. Alabama, 49 F.3d 1490 (11th Cir. 1995). Therefore, all counts purporting to state a cause of action pursuant to Title VII against James McDaniel individually must be dismissed.

**CONCLUSION**

Defendants' motion to dismiss for lack of subject matter jurisdiction is **GRANTED**. Plaintiff has not met her burden of producing evidence sufficient to establish an issue of fact regarding the identify of her employer. The claims against the tribal entities, governmental and corporate, are thus properly

11

dismissed.[5]   The Title VII claims against McDaniel must be dismissed pursuant to <u>Busby v. City of Orlando</u>, 931 F.2d 764 (11th Cir. 1991). There does not appear an alternative basis for federal jurisdiction over the remaining pendent claims asserted against McDaniel in Counts IV and V, and these claims are also dismissed. 28 U.S.C. § 1367(c)(3).

The Clerk of Court is directed to close this case. All remaining motions are **DENIED** as moot.

**DONE AND ORDERED** this 7 day of Aug, 1997.

```
                              _____
                              NORMAN C. ROETTGER
                              UNITED STATES DISTRICT JUDGE
```

cc: counsel of record

---

[5] The court notes upon reviewing the record that Tribe, Inc. has not appeared through counsel in this matter. The motion to dismiss dealt with herein was filed on behalf of the Tribe, d/b/a Kissimmee Billie Swamp Safari, and the Seminole Community Development Corporation. The record does not indicate whether Tribe, Inc. was ever properly served. Further, it is not clear whether plaintiff included Tribe, Inc. in the EEOC complaint that resulted in her notice of right to sue. Plaintiff filed as Exhibit D to her motion for a protective order (DE 62) a letter dated September 14, 1995, to the EEOC investigator sent to "clarify" that she meant to charge "all business entities for whom I worked" including Tribe, Inc. The right to sue notice in this case was issued three months prior, on June 9, 1995. Plaintiff asserts that the letter constitues an "amendment" to her EEOC complaint that relates back to her original complaint. The defendant Tribe disagrees with plaintiff's view about the letter's effect (DE 66 n2), but the issue has not been fully briefed by the parties. The resolution of the instant motion to dismiss obviates the need to decide the issues of proper service and compliance with administrative requirements.